## No. 20,156.
### WOODCO, ET AL., *v.* E. W. LINDAHL, ET AL.
(380 P. [2d] 234)

Decided April 1, 1963.

Mr MARTIN P. MILLER, Mrs. PATRICIA W. WOTKYNS, for plaintiffs in error.

Mr. GASPAR F. PERRICONE, for defendants in error.

*En Banc.*

MR. JUSTICE McWILLIAMS delivered the opinion of the Court.

In their complaint the Lindahls alleged, inter alia, that:

1. They were the owners in fee of certain land in Jefferson County, which land though described with particularity was for the sake of convenience labeled as Parcels A, B, C, and D, that to the south and west of this property was a pond and that a ditch ran from the pond to the "high point" on their land.

2. On February 1, 1949, "the owners of the land upon which said pond and ditch were situated deeded to the plaintiffs [the Lindahls] the right to take from the said pond water sufficient for the reasonable irrigation of the land owned by the plaintiffs, together with a right of way or easement for the use and maintenance of the existing ditches";

3. On February 1, 1949, long prior thereto, and continuously since that date, the said water stored in said pond was carried and conducted through said ditch into and upon plaintiffs' land, and used and consumed thereon";

4. On February 2, 1960, "the defendant partnership [Woodco] acquired title to the property upon which the aforementioned right of way or easement is located"; and

5. On or about November 10, 1960, Woodco "wrongfully, unlawfully and without right tore up and covered

up the said ditch and . . . stopped the flow of water from said pond through said ditch to plaintiffs' land."

The Lindahls asked for damages from Woodco in the amount of $3,000 for its allegedly tortious misconduct and also sought an order that Woodco "repair and replace the damaged ditch."

Woodco initially filed a motion to dismiss "for failure to join an indispensable party." This motion did not explain why said party was "indispensable," and in fact did not even identify the missing party. This motion was denied, whereupon Woodco filed its answer. In this answer Woodco denied each and every allegation in the Lindahl complaint, and then affirmatively pled the statute of frauds, the statute of limitations, laches, and the doctrines of equitable estoppel and adverse possession.

Upon trial various deeds, or certified copies of deeds, were introduced which established the following:

1. On February 1, 1949, the Garmans, who then owned all the land now owned by the Lindahls and Woodco, and its assign, conveyed by special warranty deed to the Lindahls a portion of the land described by the Lindahls in their complaint, this deed conveying certain described land "together with all water and ditch rights appertaining thereto. Grantors hereby quit-claim to the said grantees a right to take from the pond situated on land owned by the grantors to the south and west hereof water sufficient for the reasonable irrigation of the land hereby conveyed, together with a right of way or easement for the use and maintenance of existing ditches";

2. The aforementioned deed was filed for record with the office of the clerk and recorder for Jefferson County on February 14, 1949;

3. On May 16, 1949, the Garmans conveyed by warranty deed to one McDonald the land now owned by Woodco and its assign, this conveyance excepting "all existing and granted rights of way";

4. The aforementioned was filed for record with the recorder on May 20, 1949;

5. On May 18, 1949, the Lindahls conveyed by quit-claim deed to McDonald all of their "right to take water from a pond as described in that certain Special Warranty Deed" executed and delivered by the Garmans to the Lindahls on February 1, 1949, and on that same date McDonald then conveyed by quitclaim deed to the Lindahls "a right to take and use water from a certain pond situate on a portion of the property described in Book 626 at page 122 of the records of the clerk and recorder's office of Jefferson County, Colorado. The grantor in this deed reserves . . . a first and prior right . . . and the grantees in this deed are granted a subordinate right to take and use water reasonably necessary for the normal irrigation of land owned by them"; and

6. Those last mentioned deeds were properly filed in the office of the clerk and recorder for Jefferson County on May 20, 1949.

The evidence also established that on February 24, 1960, Woodco by warranty deed received title from the Lantows to certain described realty which was covered and included in the earlier warranty deed from Garmans to McDonald, executed and delivered on May 16, 1949, although the deed to Woodco, unlike the deed from Garmans to McDonald, did not except "all existing and granted ditch rights of way."

Woodco apparently acquired this property for the purpose of development and resale. In any event some time in the fall of 1960 Woodco caused this land so acquired to be graded and cut for roads, and in so doing it "tore up and covered the ditch" through which the Lindahls carried water from the aforementioned pond to their land.

Upon trial it became evident that Woodco had since sold to a church known as "Living Waters" a parcel of their land lying immediately to the west of the Lindahl property and immediately to the east of property still owned by Woodco. So, as of the date of trial, the physical facts were that the pond was still at least partially on the

land owned by Woodco, that the ditch from the pond to the Lindahl property led from the pond across the Woodco property and then onto and across the land conveyed by Woodco to Living Waters, and then onto the Lindahl property, and that the ditch was cut in two places by a county road, once on Woodco's property and once on that now owned by Living Waters.

The trial court held that Woodco intentionally destroyed this ditch through which the Lindahls carried water from the pond to their land and awarded damages in the amount of $200. Also the trial court ordered Woodco "to renew the ditch up to the property line of the Living Water." By the present writ of error Woodco seeks reversal of this judgment.

Woodco contends that the judgment must be reversed because the trial court erred in two particulars:

1. In denying Woodco's motion to dismiss for failure to join an indispensable party which was interposed both "before and during the trial"; and

2. In denying Woodco's motion to strike the allegations in the complaint concerning the tract of land described as Parcel B.

It is deemed to be of at least passing interest to note that Woodco does not assign as error the finding of the trial court that the Lindahls had a right to use the ditch leading from the pond to the Lindahl property. Nor does it challenge the finding that it (Woodco) had intentionally destroyed the ditch with resultant damage to the Lindahls in the amount of $200. That such findings go unchallenged is really not too surprising, as the Lindahls demonstrated by certain deeds which were a matter of public record that they clearly had the record right to use the ditch to carry such water as they were entitled to from the pond to their property, nor was there much doubt but that Woodco through its agents "tore up and covered up" this ditch in readying the land for building purposes.

Woodco argues that Living Waters and Jefferson

County were indispensable parties to this proceeding, and that the complaint should have been dismissed for the failure of the Lindahls to join Living Waters and Jefferson County as defendants.

█ Rule 19, R.C.P. Colo. provides in part as follows:

"Subject to the provisions of rule 23 and to subdivision (b) of this rule, *persons having a joint interest should be made parties* and be joined on the same side as plaintiffs or defendants . . . When persons who are not indispensable, but who ought to be parties *if complete relief is to be accorded between those already parties,* have not been made parties and are subject to the jurisdiction of the court as to service of process the court shall order them summoned to appear in the action . . ." (Emphasis supplied.)

Do Living Waters and Jefferson County have such a "joint interest" that they are "indispensable parties"? Or, if they are not "indispensable parties," ought they to be parties "if complete relief is to be accorded between those *already parties"?* We conclude that in each instance the answer is in the negative.

█ "Indispensable parties" have been repeatedly defined in language similar to that used in *Ford v. Adkins,* 39 Fed. Supp. 472, where it was said:

"If the Court can do justice to the parties before it without injuring absent persons, it will do so, and shape its relief in such a manner as to preserve the rights of the persons not before the court . . . One is not an indispensable party to a suit merely because he has a substantial interest in the subject matter of the litigation, nor is one an indispensable party even though one's interest in the subject matter of the litigation is such that his presence as a party to the suit is required for a complete adjudication in that suit of all questions related to the litigation. The test . . . may be stated thus: Is the absent person's interest in the subject matter of the litigation such that no decree can be entered in the case which will do justice between the parties actually before the court

without injuriously affecting the right of such absent person?"

"Persons having an interest in the subject matter of litigation which may conveniently be settled therein, are 'proper parties', those whose presence is essential to determination of entire controversy are 'necessary parties', but, if interests of parties before the court may be finally adjudicated without affecting interests of absent parties, presence of 'proper parties' is not indispensable, whereas 'indispensable parties' are those having such an interest in subject-matter of controversy that final decree between parties before the court cannot be made without affecting their interests or leaving controversy in such situation that its final determination may be inequitable."

Applying the foregoing to the instant case, we conclude that Jefferson County and Living Waters were no doubt "proper parties," but that under the circumstances neither is an "indispensable party." The Lindahls proved to the satisfaction of the trial court that Woodco trespassed on their right to use an existing ditch, all with resultant damage in the amount of $200. How can it be seriously argued that because the Lindahls declined to name Living Waters and Jefferson County as parties-defendant the trial court was powerless to proceed and dispose of the Lindahls' claim for damages allegedly resulting from Woodco's tortious misconduct? Or that the trial court could not afford "complete relief" between the Lindahls and Woodco because of the absence of Jefferson County and Living Waters? Even if Living Waters and Jefferson County could be classified as joint tortfeasors, which in fact they are not, neither would be an indispensable party. It is well established that where two persons commit a wrong and only one is sued, the wrongdoer who is sued can not complain because the other wrongdoer is not made a party to the law suit. See, for example, *Thomas v. Meyer*, 345 Ill. App. 84, 101 N.E. (2d) 626.

■ The trial court in its decree also ordered Woodco "to renew the ditch up to the property line of the Living Waters," in other words to "renew the ditch" as it had theretofore existed, but only on property still owned by Woodco. Because such may involve the placing by Woodco of a culvert under a so-called county road, Woodco claims Jefferson County is an indispensable party. It should be remembered that Woodco bought the tract in question for development and re-sale. To further this plan Woodco built the road in question and in so doing cut the ditch. The fact that said road was later dedicated to the county by Woodco in no manner absolves Woodco nor does it render Jefferson County an "indispensable party" when Woodco is simply being asked to remedy its mistake.

Woodco also contends that the Lindahls in their complaint alleged a right to use water in connection with their ownership of a particular tract of land called Parcel No. B and that the evidence clearly showed that in connection with this parcel they did not have any such water right. This may well be true, in fact is virtually conceded by the Lindahls, but by the same token the Lindahls quite clearly did establish their right to use water from the pond on certain of their acreage *other* than so-called parcel B. It should be remembered that this was not an action to determine *how much* water the Lindahls were entitled to divert from this pond for their use, but rather one seeking damages for the unlawful interference with their right to carry water through the ditch and to then compel the trespasser to undo his mischief.

In support of the general proposition that the Lindahls had a "vested right in the ditch . . . to have their water flow across the [Woodco] land . . .", see *Valley Development Co. v. Weeks,* 147 Colo. 591, 364 P. (2d) 730.

The judgment is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE HALL not participating.