Donald P. HICKS, Plaintiff–Appellant
and Cross–Appellee,

v.

Shirley S. JOONDEPH; Brian C. Joondeph; and CitiMortgage, Inc., Defendants–Appellees and Cross–Appellants.

No. 07CA0995.

Colorado Court of Appeals,
Div. VII.

Aug. 21, 2008.

Montgomery Little Soran & Murray, P.C., Frederick B. Skillern, Max S. Stitch, Michael R. McCormick, Greenwood Village, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Hamil/Hecht, LLC, J. Lawrence Hamil, Pamela H. Vanderpool, Denver, Colorado, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge CARPARELLI.

Plaintiff, Donald P. Hicks, appeals the judgment granting defendants, Shirley S. Joondeph, Brian C. Joondeph, and CitiMortgage, Inc., priority over his earlier recorded judgment lien. Defendants cross-appeal the trial court's conclusion that Hicks's judgment lien is valid. We reverse and remand for further proceedings.

## I. Background

In 2001, Hicks obtained a judgment of more than $400,000 against the original owner of property in Arapahoe County and recorded that lien behind three other interests, the first of which was a deed of trust held by Washington Mutual. In 2002, the owner sold the property to the Londres, who took title without actual knowledge of the judgment lien and granted a deed of trust to Chase Manhattan. Washington Mutual was paid $1,427,191 and released its deed of trust. However, the judgment lien was not satisfied in the course of that transaction, and Hicks sued to foreclose his judgment lien and recorded a lis pendens. In *Hicks v. Londre,* 125 P.3d 452 (Colo.2005) (*Hicks II* ), the supreme court ruled that, based on equitable subrogation, the Chase deed of trust would have the same recording priority as the Washington Mutual deed of trust had before it was released. Three months before the supreme court issued its decision in *Hicks II,* the Londres conveyed the property to the Joondephs by warranty deed. The Joondephs had notice of the judgment lien and obtained title insurance against any loss or damage they might suffer as the result of the notice provided by the lis pendens and enforcement of the lien. The Joondephs granted a deed of trust to their lender to secure a debt of $1,193,800, the lender also had notice of the judgment lien, and CitiMortgage now holds that deed of trust.

In 2006, Hicks filed this action seeking a declaration that his lien was superior to the interests and liens of the Joondephs and CitiMortgage. He also sought judicial foreclosure of his lien. The Joondephs and CitiMortgage filed counterclaims seeking a declaration that the Joondephs' title and CitiMortgage's deed of trust were superior and adjudication under C.R.C.P. 105(a) to the same effect. The trial court granted summary judgment to the Joondephs and CitiMortgage, holding that the warranty deed to the Joondephs conveyed the recording priority enjoyed by the Londres and Chase.

## II. Equitable Subrogation—An Exception to the Recording Act

Hicks contends that the trial court erred when it applied the doctrine of derivative subrogation and held that the Joondephs received the Londres' priority position as the grantees of the warranty deed conveying the property. We agree.

In the analysis that follows, we discuss *Hicks II* and the remedy it granted, and review the trial court's decision here.

### A. *Hicks II*

The priority of liens is governed by the Colorado Recording Act, section 38–35–109, C.R.S.2007 (Recording Act). Generally, a judgment creditor who properly records a judgment lien on real property has superior priority rights, even against a subsequent owner of the property. *Hicks II,* 125 P.3d at

456. Equitable subrogation provides a narrow exception to the Recording Act, and may be "invoked only within the overall context of equity and the specific facts of each case." *Hicks II*, 125 P.3d at 457. In the mortgage context, "equitable subrogation permits the substitution of a later lienholder into the lien-priority status of a prior lienholder." *Hicks II*, 125 P.3d at 456. "Subrogation is not a matter of right, but is purely equitable in nature and will not be enforced when it would work an injustice to the rights of those having equal equities." *Hicks II*, 125 P.3d at 459–60.

In *Hicks II*, the supreme court first applied five criteria.

(1) The party seeking subrogation must have made the payment to protect its own interest.

(2) The party seeking subrogation must not have been a volunteer.

(3) The party seeking subrogation must not have been primarily liable for the debt.

(4) The party seeking subrogation must have paid off the entire encumbrance.

(5) Subrogation must not prejudice the junior lienholder. *Hicks II*, 125 P.3d at 456.

The court explained that, among the first five criteria,

> the preeminent consideration is the prejudice to the intervening lienholder. If the intervening lienholder is prejudiced, equitable subrogation cannot apply. If no prejudice would result, and the remaining four elements have been satisfied, our cases demonstrate that courts must then consider the putative subrogee's knowledge of the intervening lien, its negligence in failing to discover the intervening lien, and the subrogee's degree of sophistication. On the last point, courts have held that the equitable nature of the doctrine justifies holding sophisticated parties such as commercial lenders to a higher standard.

*Hicks II*, 125 P.3d at 459.

The court stated that "even if these elements are satisfied, courts then look to whether the party seeking subrogation acted with knowledge, negligence, or a degree of sophistication such that application of the doctrine would be inequitable." *Hicks II*, 125 P.3d at 457–58.

Applying these criteria and principles to the dispute between Hicks and the Londres, the supreme court concluded that there was no evidence that the Londres or their commercial lender had actual knowledge of Hicks's prior lien, and there was no evidence that they were negligent in failing to discover it. *Hicks II*, 125 P.3d at 460. To the contrary, they had obtained a full title insurance commitment that did not include the lien among the existing encumbrances. Applying equitable subrogation "within its narrow confines," the court ruled that equity required that the Londres and their commercial lender be allowed to step into the first lien position formerly held by Washington Mutual.

## B. The Trial Court's Decision Here

Here, the trial court granted summary judgment in favor of the Joondephs and CitiMortgage. Relying on *United States v. Avila*, 88 F.3d 229, 238 (3d Cir.1996), the court stated that the chief rationale for allowing equitable subrogation is to prevent the junior lienholder from being unjustly enriched at the expense of a new purchaser or mortgagee of the property. On that premise the court stated that, if subrogation were to be denied to the Joondephs and CitiMortgage, Hicks would be unjustly enriched and a windfall benefit would pass to him upon enforcement of his lien.

Although the trial court discussed *Hicks II*, it did not rule that the Joondephs and CitiMortgage should be *equitably* subrogated to the recording priority position formerly enjoyed by the Londres and Chase. Instead, it ruled that the Joondephs and CitiMortgage were *derivatively* subrogated to Chase's lien priority. Although the warranty deed conveying title to the Joondephs did not explicitly reference the judgment lien or its priority, the court concluded that the standard language of the warranty deed also conveyed the priority granted to the Londres and Chase in *Hicks II*.

The trial court framed the issue as "whether subsequent purchasers of property are allowed *to assert the equitable subrogation rights of the previous owner*," and resolved it stating,

> Although [the Joondephs and CitiMortgage] possessed actual knowledge of the lien encumbered on the property, all rights passed by deed to [them] upon purchase of the house *including* the right of equitable subrogation in conformity with the purpose of C.R.S. § 38–30–107 [providing that a warranty deed conveys a fee simple]. Therefore, when [the Joondephs and CitiMortgage] received the deed of trust to the property subsequent to the purchase, the deed included the previous right of subrogation that the Colorado Supreme Court had declared the Londres possessed. This right could be fully exercised by [the Joondephs and CitiMortgage] in which they would stand in the shoes of the previous owners.

#### C. Conclusions

We conclude that the court erred when it granted summary judgment in favor of the Joondephs and CitiMortgage.

First, the court's reliance on *Avila* was misplaced. The *Avila* case arose in New Jersey, where a state court had ruled that equitable subrogation is granted to a mortgagee so that holders of intervening encumbrances are not unjustly enriched at the expense of a new mortgagee who provides funds to enable the owner of record to refinance and satisfy a mortgage that is released. *Trus Joist Corp. v. National Union Fire Ins. Co.*, 190 N.J.Super. 168, 462 A.2d 603, 609 (App.Div.1983), *reversed on other grounds sub nom. Trus Joist Corp. v. Treetop Assocs., Inc.*, 97 N.J. 22, 477 A.2d 817 (1984). Here, however, title was conveyed to the Joondephs who obtained the mortgage to purchase the property, not to refinance it. In addition, unlike the New Jersey court, which sought to avoid *unjust enrichment* of the intervening lienholder, our supreme court has held that the preeminent consideration is *the prejudice* to the intervening lienholder, and that equitable subrogation cannot apply if the intervening lienholder is prejudiced. *Hicks II*, 125 P.3d at 459.

Moreover, the *Avila* court interpreted N.J. Stat. Ann. § 46:3–13 (West 1989), to provide that, unless a deed expressly states an exception, all deeds conveying lands include claims to equitable subrogation that a grantor might possess. The rationale of *derivative* subrogation is that a lien priority granted as the result of equitable subrogation may be conveyed by deed. However, the Joondephs and CitiMortgage have not cited any Colorado statute or case, and we are aware of none, that, based on derivative subrogation or any other theory, states that a grantor's statutory priority position, or that of the grantor's mortgagee, is automatically conveyed to a grantee by way of a warranty deed. To the contrary, there is ample law stating that the priorities of a warranty deed and related deed of trust are controlled by the Recording Act, and that equitable subrogation is a narrow exception to operation of the Recording Act, which can only be granted by a court after consideration of the criteria discussed earlier. *See Hicks II*, 125 P.3d at 455–56, 458; *Ameriquest Mortgage Co. v. Land Title Ins. Corp.*, —— P.3d ——, ——, 2007 WL 2128203 (Colo.App.2007) (*cert. granted* Aug. 4, 2008). In our view, a judgment awarding such equitable relief establishes the priority positions *between those litigants* and, thereafter, has the same legal effect as a priority granted under on the Recording Act.

In addition, the Joondephs and CitiMortgage have not cited any Colorado statute or case, and we are aware of none, that would support a conclusion that a priority granted in a judgment has greater vitality than one that is based on normal operation of the Recording Act. Similarly, we are aware of no basis to conclude that a judgment granting such equitable relief attaches to the land and can be conveyed to all subsequent purchasers by way of a warranty deed. Again to the contrary, in *Hicks II*, the supreme court explained that "[s]ubrogation is not a matter of right, but is purely equitable in nature and will not be enforced when it would work an injustice to the rights of those having equal equities." *Hicks II*, 125 P.3d at 459–60.

We conclude that in *Hicks II*, the court applied equitable subrogation and ruled that equities *between those parties* required that the Londres and Chase be allowed to step into the first lien position, and, thus, granted relief from operation of the Colorado Recording Act.

■ Hence, we conclude that the Colorado Recording Act controls the priority status of the Londres' warranty deed to the Joondephs and the deed of trust held by Citi-Mortgage unless and until those parties seek and obtain equitable subrogation according to the criteria discussed above and based on the equities as between them and Hicks.

We conclude that the trial court erred when it granted summary judgment to the Joondephs and CitiMortgage on the basis of derivative subrogation. Therefore, we reverse the judgment and remand for further consideration of the motions for summary judgment and such further proceedings as the court deems appropriate.

### III. Validity of Hicks's Lien

The Joondephs and CitiMortgage contend that the trial court erred when it concluded that Hicks had a valid judgment lien on the property, because Hicks failed to present sufficient evidence of his lien. We disagree.

Summary judgment should be granted only when there are no genuine issues of material fact. C.R.C.P. 56. We review a grant of summary judgment de novo and construe all facts in the light most favorable to the nonmoving party. *Natural Energy Res. Co. v. Upper Gunnison River Water Conservancy Dist.*, 142 P.3d 1265, 1276 (Colo. 2006). The moving party bears two distinct burdens: an initial burden of production which shifts to the nonmoving party once satisfied, and the ultimate burden of persuasion. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo.1987).

Here, Hicks alleged in his complaint that he had a valid judgment lien against the property, and he attached a copy of the transcript of judgment showing the amount of his lien against the property and the recording of that lien in 2001. This provided sufficient evidence of his lien. The Joondephs' and CitiMortgage's answer alleged that the judgment lien was void because it was the product of extortion. Hicks denied the allegation of extortion. In their response to Hicks's motion for modification of judgment and reconsideration, the Joondephs and CitiMortgage included excerpts of the transcript from the trial in *Hicks v. Londre* where Hicks testified that he told the original owner of the property that he would not file a criminal complaint against him if he stipulated to the judgment.

■ We conclude that Hicks presented sufficient evidence of the validity of his judgment lien and that the transcript excerpt submitted by the Joondephs and CitiMortgage was not sufficient evidence to create a genuine issue of material fact as to whether the lien was a valid encumbrance on the Joondephs' interest in the property. Therefore, the trial court did not err when it concluded that Hicks's judgment lien was valid.

### IV. Value of the Joondephs' Lien

Hicks contends that the trial court erred when it did not limit the Joondephs' and CitiMortgage's priority to the amounts paid to release the Washington Mutual deed of trust. Because we have reversed the judgment granting priority to the Joondephs and CitiMortgage, we need not address this issue.

### V. Foreclosure

Hicks contends that the trial court erred when it denied his request for a decree of foreclosure. Because we have reversed the judgment in favor of the Joondephs and CitiMortgage, we need not address this issue. However, because this issue may arise on remand, and to promote judicial economy, we note that Hicks's foreclosure argument does not address execution of judgment and levy on real property.

The judgment is reversed, and the case is remanded for further proceedings as directed.

Judge GRAHAM and Judge METZGER *
concur.